IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**KELLY ANN BROOKS**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.**, a Kansas corporation,

Defendant.

**Case No:**

**JURY TRIAL DEMANDED**

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Kelly Ann Brooks ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby brings this Collective and Class Action against Blue Cross and Blue Shield of Kansas, Inc. ("Defendant"), and states as follows:

1. Defendant is a Kansas-based health insurer with more than one million members.[1] Defendant employs hourly customer experience representatives ("CXRs") who provide call-center style customer service to Defendant's members. Instead of paying its CXRs for all work performed in furtherance of their job duties, Defendant enforced its strict attendance and schedule adherence policies and discouraged CXRs from recording all time spent booting up and logging into their computers prior to their scheduled shifts and prior to the end of their designated meal periods, as well as post-shift work that lasted less than eight (8) minutes.

[1] https://www.bcbsks.com/company-facts (last visited April 22, 2026).

2. Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), § 201, *et seq.*, and as a class action under common law to recover unpaid minimum and overtime wages and hours owed to herself and similarly situated customer experience representatives employed by Defendant.

3. Plaintiff seeks a declaration that her rights and the rights of the putative FLSA Collective and Class members were violated, and a judgment awarding unpaid wages, liquidated damages, attorneys' fees and costs, along with all other relief to which they are entitled. Plaintiff seeks any additional remedies available to ensure that Defendant does not subject future employees to the same unlawful practices.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

5. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

6. Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

7. This Court has personal jurisdiction over Defendant because Defendant conducts business within this District, employs individuals within this District, and maintains its principal place of business in this District.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant employed Plaintiff in this District, Defendant is headquartered and conducts business in this

District, and a substantial part of the events giving rise to the claims herein occurred in this District.

## PARTIES

9. Plaintiff is an adult resident of Sawyer, Kansas and was employed by Defendant in Kansas from February 2022 to November 2025. Plaintiff's consent to join form is attached as ***Exhibit A***.

10. Additional putative Collective members were or are employed by Defendant in call-center style customer service roles during the past three years and their consent forms will also be filed in this case.

11. Defendant, Blue Cross Blue Shield of Kansas, Inc., is a Kansas corporation that maintains its principal place of business in Topeka, Kansas.

12. Defendant Blue Cross and Blue Shield of Kansas, Inc.'s registered agent for purposes of service is BLUE CROSS AND BLUE SHIELD OF KANSAS, INC. 1133 Topeka Ave., Topeka, KS 66609.

## STATEMENT OF FACTS

13. Plaintiff worked for Defendant from February 2022 through November 2025 as a non-exempt, hourly employee.

14. Plaintiff worked in-person at Defendant's Topeka, KS call center for a few months at the beginning of her employment, and then as a remote Customer Experience Representative. Her most recent base hourly rate of pay was $23.25.

15. During the past three years, Defendant employed hundreds of hourly workers in call-center style customer service roles located in multiple states including, but not limited to, Kansas and Missouri. These employees had a number of different job titles including but not limited to Customer Experience Representative (collectively referred to herein as "CXRs").

16. Regardless of the specific job title, all CXRs were: (1) paid on an hourly basis; (2) classified as non-exempt employees; (3) using the same timekeeping system(s); (4) using many (if not all) of the same computer programs to perform their jobs; (5) subject to the same relevant attendance, adherence, and timekeeping policies; and (6) tasked with the primary job duty of providing call-center style customer service to Defendant's members.

17. Throughout their employment with Defendant, Plaintiff and the other CXRs were required to work substantial amounts of uncompensated off-the-clock time as part of their job duties.

18. Defendant systematically failed to compensate its CXRs for work completed before and after their scheduled shifts, as well as during their designated and deducted meal periods when they were not logged into Defendant's timekeeping system.

19. On information and belief, Defendant maintained documents that demonstrate the promised hourly wage for each CXR, including but not limited to: offer letters, pay statements, and/or other payroll records.

20. Plaintiff and the other CXRs typically worked five (5) days each week and forty (40) or more hours per week.

21. Plaintiff worked at least forty (40) hours in almost every week of her employment with Defendant and regularly worked more than forty (40) hours in a workweek.

22. Defendant provided training to CXRs on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day; the importance of attendance and schedule expectations; and Defendant's related policies and procedures.

23. All CXRs were subject to the same policies and procedures and the training that all

CXRs received was substantially, if not entirely, the same.

24. At all relevant times, Defendant controlled Plaintiff's and all other CXRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

25. To the extent that Defendant may have written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in CXRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

26. Defendant required Plaintiff and the other CXRs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job duties.

27. Defendant issued work schedules to Plaintiff and other similarly situated CXRs that strictly dictated Defendant's work expectations, specifically "phone ready" requirements.

28. More specifically, Defendant instructed Plaintiff and other similarly situated CXRs to be "phone ready" (meaning logged into and have ready all computer programs and applications they utilized as part of their job duties) the moment their scheduled shifts started. This required CXRs to load and log into their essential work-related computer programs and applications ***before*** the start of their shifts and ***before*** they were allowed to clock in so they could be prepared to field Defendant's customers' inquiries the moment their shifts began.

29. During the boot-up and login process, CXRs regularly experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

30. Defendant maintained a policy of requiring CXRs who were unable to be in "ready" status within one minute of the start of their shift to begin taking calls, to contact a "call system specialist" and their supervisor. A "system problem" ticket would be created and the CXR was

required to provide justification to their supervisor as to why they were not in the call queue. Off-the-clock time related to these technical issues was only paid if the supervisor approved the justification.

31. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other CXRs in order to pressure them into performing pre-, mid- and post-shift work off-the-clock.

32. These policies and procedures, which were utilized for purposes of evaluating CXR job performance, effectively enforced the "phone ready" policy and required CXRs to perform off-the-clock work.

33. Defendant's adherence policy also required an "all clear" from supervisors before allowing CXRs to stop taking calls at the end of their shifts. Plaintiff and other CXRs generally received this "all clear" approximately four (4) to seven (7) minutes following the scheduled end of their shifts, but were not paid for this time.

34. Pursuant to these policies and procedures, Defendant's CXRs, including Plaintiff, faced warnings, coaching, poor performance evaluations, performance improvement plans ("PIPs"), other disciplinary action, and termination for failing to be "phone ready."

35. All of Defendant's CXRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CXRs' work and they could not perform their jobs without them.

36. The pre-, mid- and post-shift off-the-clock time Plaintiff and all other CXRs spent booting-up/logging into their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CXRs' job responsibilities.

37. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CXRs spent in connection with the pre-, mid- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CXRs for the off-the-clock work they performed, thus breaching its contracts with its CXRs.

38. Further, in light of explicit and long-standing DOL guidance, there is no conceivable way for Defendant to establish that it acted in good faith.

39. Defendant knew or should have known that the FLSA requires employers to compensate employees for all hours worked during the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a); *see also* 43 P.S. § 333.104.

40. Defendant also knew or should have known that 29 U.S.C. § 207 requires non-exempt employees who work more than forty (40) hours in a workweek to be paid overtime at one and one-half times their regular rate of pay, which includes compensable boot-up and call-ready work.

41. Nevertheless, Defendant failed to pay Plaintiff and all other current and former CXRs overtime compensation at one and one-half times their regular rates of pay for the off-the-clock work described herein.

42. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CXRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

43. Defendant was aware that Plaintiff and the CXRs worked more than forty (40) hours in multiple workweeks because Defendant's own payroll and scheduling records documented the hours they were scheduled to work and the hours for which Defendant issued payment.

44. Because Defendant required its CXRs, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CXRs spent working for Defendant. Thus, the hours reflected on the CXR's paystubs are also inaccurate representations of the hours they worked.

**Unpaid Pre-Shift Boot-Up and Call Ready Work**

45. Defendant's CXRs were trained and required to start up and log into Defendant's computer network and software programs in order to access the information necessary to perform their job duties and be considered "phone ready" *before* actually marking themselves "Ready" in Defendant's phone software.

46. The pre-shift boot-up and login process was the same whether CXRs worked remotely or in-office and generally consisted of the following steps:

a. Waking up the computer;

b. Logging into Windows with a username and unique personal 16-digit passcode;

c. Answer a phone call or text to receive a code for two-factor authentication;

d. Launching Defendant's CSI software (to access customer's claims and make notes in their files);

e. Launching Defendant's imaging software (to view copies of customer's claims);

f. Launching Defendant's AI resource software, Oz;

g. Launching pharmacy vendor programming (to use as reference on calls);

h. Launching Microsoft Outlook and Teams to catch up on messages before shift; and

i. Launching Avaya (Defendant's phone system and timekeeper through which CXRs marked themselves "Ready" to take calls).

47. The boot-up and login process described above took approximately fifteen (15) to twenty (20) minutes per shift.

48. If CXRs experienced technical issues during the boot-up and login process, the process could take up to forty-five (45) minutes.

49. If CXRs arrived at their computers immediately prior to their scheduled shifts, they were in danger of discipline for being late because they could not complete the required pre-shift work necessary to be "Ready" in Avaya when their scheduled shifts began, and Defendant considered them tardy.

50. Defendant expected Plaintiff and all other CXRs to respond to customer inquiries and handle calls for the entirety of their scheduled shifts. This expectation, coupled with Defendant's attendance and adherence policies, necessarily required CXRs to perform work off-the-clock in order to be fully prepared and "Ready" at the start of their shifts.

51. The pre-shift off-the-clock time Plaintiff and all other CXRs spent booting up and logging in directly benefited Defendant and was integral and indispensable to the CXRs' job responsibilities.

52. Despite knowing Plaintiff and all other CXRs perform this pre-shift work, Defendant and its supervisors and managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

53. Instead, Plaintiff and all other CXRs were instructed to submit a weekly timesheet for exactly the number of hours they were *scheduled*. Exceptions were only made for post-shift off-the-clock work that lasted longer than eight (8) minutes, which rarely occurred..

**Unpaid Mid-Shift Off-the-Clock Work**

54. Defendant provided its CXRs one unpaid 30-minute meal period each eight (8)

hour shift.

55. However, Defendant did not provide CXRs with legitimate bona fide meal periods because it required its CXRs to return to their computers prior to the end of their unpaid meal periods and log back in so they could resume taking calls the moment their meal periods ended.

56. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

57. Advisors spend approximately five (5) minutes per shift performing this work during their unpaid meal periods. Thus, Defendant maintained a common practice, plan and policy pursuant to which it failed to pay CXRs for work performed during their meal periods.

**Post-Shift Off-the-Clock Work**

52. At all relevant times, though the use of computer software systems, Defendant recorded Plaintiff and other CXRs' time clock punches on a daily basis.

53. Throughout her employment with Defendant, Plaintiff entered her time weekly in Defendant's internal timesheet. Rather than enter all time worked including pre-shift bootup and post-shift call or after-call work time, Plaintiff and all other CXRs were trained to enter eight (8) hours for each day unless they worked eight (8) minutes or more past their scheduled end of shift time.

54. Defendant maintained an unlawful policy which failed to pay Plaintiff and other CXRs for all time worked.

55. At the end of her shifts, when Plaintiff remained on a call with a client past her scheduled end time to complete the call, she was not compensated for any time worked beyond her shift if she clocked out between one (1) and seven (7) minutes after its conclusion.

56. In each workweek where Plaintiff worked forty (40) hours or more, this policy

resulted in an unlawful deprivation of the overtime wages required by the FLSA.

57. In each workweek where Plaintiff worked less than (40) hours, this policy resulted in an unlawful deprivation of wages at minimum wage or her base rate of pay.

58. On information and belief, the unlawful pay practices evidenced in Plaintiff's earnings statements were committed against every hourly employee in every workweek.

59. Defendant's policy was intended to systematically underpay all of its hourly employees, and Defendant was unjustly enriched as a result.

60. Defendant's practice of failing to pay Plaintiff and other CXRs' post-shift off-the-clock time resulted in a substantial amount of uncompensated work over the past three years.

61. Defendant knew or should have known that all of Plaintiff and other CXRs' hourly work is compensable under the FLSA.

62. As a matter of common business policy, Defendant failed to pay Plaintiff and other CXRs for all work performed as set forth herein. They were not paid their promised hourly wage for all work performed, and they were not paid overtime, as required by the FLSA, in weeks in which they worked more than forty (40) hours.

63. As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and other CXRs for unpaid wages, liquidated damages, reasonable attorney's fees, costs, interest, and any other relief deemed appropriate by the Court.

**COLLECTIVE ACTION ALLEGATIONS**

64. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of:

> *All current and former hourly CXRs who worked for Defendant at any time during the past three years preceding the filing of this Complaint.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

65. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

66. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation in workweeks during which they worked more than forty (40) hours.

67. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

68. Defendant was aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

69. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for Defendant's benefit.

70. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

71. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the CXRs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar

positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its CXRs for all overtime wages in violation of the FLSA); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, work location, and rate of pay.

72. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former CXRs over the relevant period, includes hundreds of members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records.

73. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

74. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of:

> *All current and former CXRs who work or have worked for Defendant anywhere in the United States during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

75. *Numerosity:* The members of the Rule 23 Nationwide Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action

will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members, each of whom should be easy to identify from Defendant's computer systems and personnel and payroll records.

76. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time the Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable;

b. Whether the mid-shift time the Rule 23 Nationwide Class members spent on logging back into their computers is compensable;

c. Whether the post-shift time the Rule 23 Nationwide Class members spent finishing customer calls and notetaking, safely closing programs, and shutting down computers is compensable;

d. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract and/or resulted in Defendant being unjustly enriched; and

e. The proper measure of damages sustained by the Rule 23 Nationwide Class.

77. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Nationwide Class members in that Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

78. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in

the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

79. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Nationwide Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

80. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant maintains a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

81. Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

82. Because Defendant acted and refused to act on grounds that apply generally to the

Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES**

83. Plaintiff re-alleges and incorporates all previous paragraphs herein.

84. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

85. Defendant engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

86. At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

87. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

88. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

89. Plaintiff engaged in commerce and was employed in an enterprise engaged in commerce.

90. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

91. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

92. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees the federally mandated overtime compensation for all work performed over forty (40) hours per week.

93. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs. These activities and the time associated with these activities was significant.

94. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

95. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

96. Defendant's violations of the FLSA were knowing and willful.

97. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

98. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

99. Plaintiff re-alleges and incorporates all previous paragraphs herein.

100. At all times relevant to this action, Defendant had binding and valid contracts with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

101. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CXR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

102. For example, Defendant offered to compensate Plaintiff at a wage certain per hour if she agreed to perform services for Defendant as a CXR. Plaintiff accepted Defendant's offer and performed her duties as a CXR in reliance on the offer.

103. Defendant breached its contractual promises by failing to pay CXRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

104. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

105. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

106. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-

clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

107. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

108. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

109. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour and failed to compensate them for all hours worked, including (i) straight-time hours in workweeks where fewer than forty (40) hours were worked (i.e., "gap time") and (ii) unpaid straight-time wages for hours worked up to and in excess of forty (40) hours in workweeks where Plaintiff and the Rule 23 Nationwide Class members worked overtime when considering the off-the-clock work described herein (i.e., "overtime gap time").

110. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

111. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

112. Plaintiff re-alleges and incorporates all previous paragraphs herein.

113. This Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

114. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

115. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

116. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

117. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

118. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

119. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

120. Upon information and belief, Defendant used the monies owed to Plaintiff and

every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

121. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

122. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

123. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d. An Order designating Plaintiff to act as the representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e. An Order declaring that Defendant violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant's violations of the FLSA were willful;

g. An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; OR in the alternative, an Order declaring Defendant was unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Nationwide Class to perform;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Date: May 19, 2026

Respectfully submitted,

*/s/ Paul D. Snyder*
Paul D. Snyder KS #14537
**SNYDER LAW FIRM, LLC**
10955 Lowell Ave., Suite 710
Overland Park, KS 66210
(913) 685-3900
psnyder@snyderlawfirmllc.com

Jason J. Thompson (P47184) *(PHV forthcoming)*
Paulina R. Kennedy (P84790) (*PHV forthcoming)*
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Proposed Collective*